**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| BCBSM, INC. d/b/a Blue Cross and Blue Shield of Minnesota, | Civil No. 21-1885 (JRT/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING MOTION TO REMAND, DENYING MOTION FOR ATTORNEY FEES, AND DENYING MOTION TO DISMISS** |
| I.B.E.W. 292 HEALTH CARE PLAN, | |
| Defendant. | |

---

Gerardo Alcazar and Jerry W. Blackwell, **BLACKWELL BURKE PA**, 431 South Seventh Street, Suite 2500, Minneapolis, MN 55415, for plaintiff.

Amanda R. Cefalu and Ruth S. Marcott, **KUTAK ROCK LLP**, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402, for defendant.

Plaintiff BCBSM, Inc. commenced this action by serving Defendant I.B.E.W. 292 Health Care Plan (the "Plan") with a Minnesota state court complaint alleging the Plan breached a contract between the parties and seeking (1) a declaratory judgment that the Plan must defend and indemnify BCBSM in accordance with the contract and (2) monetary damages.  The Plan removed the action to federal court asserting BCBSM's claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") and therefore the Court has original federal question subject matter jurisdiction.  The Plan then filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  BCBSM filed a Motion to Remand to state court.  BCBSM also seeks to recover

its attorney fees and costs from responding to the removal.  The Court lacks federal question subject matter jurisdiction because ERISA does not preempt the claims raised in BCBSM's well-pleaded Complaint.  As a result, the Court will grant BCBSM's Motion to Remand.  The Court will, however, deny BCBSM's Motion for Attorneys' Fees.  The Court will also deny the Motion to Dismiss as moot.

**BACKGROUND**

## I.    FACTUAL BACKGROUND

The Plan is a self-insured, self-administered multiemployer benefits plan established under the Taft-Hartley Act that provides medical benefits.  (Notice of Removal, Ex. 1 ("Compl.") ¶ 2, Aug. 20, 2021, Docket No. 1.)  It is subject to ERISA, 29 U.S.C. § 1000, *et seq.*  (Notice of Removal ¶ 11.)  BCBSM is a nonprofit health service plan corporation.  (Compl. ¶ 1.)

BCBSM alleges the parties entered into an Agreement concerning the payment of medical claims for beneficiaries of the Plan.  (*Id.* ¶ 5; *see also* Sealed Exs. for Aff. of Amanda R. Cefalu, Ex. 5 ("BCBSM-Plan Agreement"), Aug. 27, 2021, Docket No. 10.)  Under the Agreement, BCBSM provided the Plan access to a BCBSM network of medical providers and discounts negotiated with those providers.  (Compl. ¶ 9.)  According to BCBSM, the Agreement provided that BCBSM did not assume any financial risk associated with claims and the Plan retained final authority to determine eligibility for benefits and

to adjudicate claims.  (*Id.* ¶¶ 6–8.)  And, BCBSM alleges, the Plan agreed under Section

4.4 of the Agreement that it will

> indemnify, defend, and hold [BCBSM] forever harmless, from
> and against, any and all claims, demands, actions, litigation,
> judgments, liabilities, fines, penalties, awards, expenses
> and/or associated costs and legal fees which are made or
> incurred by any third party or parties and which arise from any
> dispute regarding coverage, denial of benefits, claims
> payments, claims administration or claims adjudication in
> connection with [the Plan] or its Eligible Persons use of the
> Network pursuant to this Agreement and in accordance with
> current law or otherwise, except to the extent such third party
> claims, demands, actions, litigation, decrees, judgments,
> losses, damages, liabilities, fines, penalties, awards, expenses
> and/or associated costs and legal fees result directly from the
> breach of [BCBSM] its agents or subcontractors of any
> obligations of [BCBSM] under this Agreement.

(*Id.* ¶ 10; *see also* BCBSM-Plan Agreement at 52.)[1]

From August 2017 to September 2018, Fairview Health Services ("Fairview")

provided services to a beneficiary of the Plan totaling $3,638,778.23.  (Compl. ¶ 11.)

Fairview was a member of the network that BCBSM provided the Plan access to, and the

BCBSM-Fairview relationship was governed by a separate "Master Agreement."  (Sealed

Exs. for Aff. of Amanda R. Cefalu, Ex. 3 ("BCBSM-Fairview Master Agreement"), Aug. 27,

2021, Docket No. 10; *see also* Notice of Removal ¶¶ 6, 10; Compl. ¶ 21.)  In April 2020,

Fairview submitted claims to BCBSM for these services.  (Compl. ¶ 12.)  According to the

---

[1] For clarity, all citations to page numbers refer to the CM/ECF pagination.

Complaint, BCBSM forwarded Fairview's claims to the Plan's Claim Administrator under the terms of the Agreement who then denied the claims. (*Id.* ¶¶ 12–13.)

Fairview appealed the denial of the claims but lost the appeal. (*Id*. ¶ 13.) The Master Agreement between BCBSM and Fairview provides that disputes between BCBSM and Fairview will be resolved via mandatory binding arbitration.[2] (BCBSM-Fairview Master Agreement at 11.) After Fairview lost its appeal of the denial, Fairview sent BCBSM a notice of arbitration which BCBSM claims it forwarded to the Plan with a demand that the Plan indemnify and defend BCBSM in accordance with the Agreement. (Compl. ¶¶ 14–15; Aff. of Amanda R. Cefalu ("Cefalu Aff."), Ex. 4, Aug. 27, 2021, Docket No. 9.) BCBSM alleges that although the Plan acknowledged the claims arose from services provided to a Plan beneficiary, the Plan twice denied BCBSM's demand. (Compl. ¶¶ 16–17.)

## II.   PROCEDURAL HISTORY

BCBSM served its Minnesota state court complaint on the Plan without filing it in state court. (Notice of Removal ¶¶ 1–2.) On August 20, 2021, the Plan removed the case to federal court. (*Id.*) The Plan asserts the Court has original subject matter jurisdiction over the case under federal question jurisdiction because the claims arise under the

---

[2] The Court notes the Master Agreement submitted to the Court indicates it is effective July 1, 2008 to December 31, 2009. (BCBSM-Fairview Master Agreement at 2.) No party disputes, however, that the material terms of this Master Agreement were still in effect at all times relevant to this case.

federal statutes and regulations governing ERISA and are preempted by ERISA §§ 502 and 514 and the Court has supplemental jurisdiction over any state-law claims made in addition to those for which the Court has original jurisdiction. (*Id.* ¶¶ 12–16.)

On August 27, 2021, the Plan moved to dismiss (1) all BCBSM's claims under Rule 12(b)(6) asserting they are preempted by ERISA and (2) BCBSM's claim for a declaratory judgment under Rule 12(b)(1) asserting this claim is not yet ripe. (Mot. Dismiss, Aug. 27, 2021, Docket No. 7; Mem. Supp. Mot. Dismiss at 13–28, Aug. 27, 2021, Docket No. 12.)

On September 7, 2021, BCBSM moved to remand the case to state court and for its attorney fees and costs responding to the removal. (Mot. Remand & Att'y Fees, Sept. 7, 2021, Docket No. 15.) BCBSM argues the face of the Complaint asserts a state-law cause of action arising out of an agreement between Minnesota citizens and that complete ERISA preemption does not apply. (Mem. Supp. Mot. Remand & Att'y Fees at 3–8, Sept. 7, 2021, Docket No. 17.) In support of its request for fees, BCBSM argues the Plan had no objectively reasonable basis for removal. (*Id.* at 8–9.) BCBSM also requested the Court rule on its Motion to Remand before ruling on the Plan's Motion to Dismiss. (Mot. Remand & Att'y Fees.)

In addition to this case, the trustees for the Plan filed their own action in this Court naming both BCBSM and Fairview as defendants seeking a declaratory judgment that ERISA preempts any action brought by Fairview arising out of the denied claims, to enforce the terms of the Plan's benefit plan documents, and alleging BCBSM breached

the Agreement.  (*Manderson v. Fairview Health Services*, Case No. 21-1797, Compl., Aug.

5, 2021, Docket No. 1.)

**DISCUSSION**

**I.     MOTION TO REMAND**

   **A.     Standard of review**

   A defendant may remove a civil action to federal court only if the action could have

been originally filed in federal court.  28 U.S.C. § 1441(a); *Gore v. Trans World Airlines*,

210 F.3d 944, 948 (8th Cir. 2000).  The party seeking removal bears the burden of

establishing federal subject matter jurisdiction by a preponderance of the evidence.  *In re*

*Prempro Prod. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010).  "All doubts about federal

jurisdiction should be resolved in favor of remand to state court."  *Id.*  "If at any time

before final judgment it appears that the district court lacks subject matter jurisdiction,

the case shall be remanded" back to state court.  28 U.S.C. § 1447(c).

   **B.     Analysis**

   "Removal based on 'federal-question jurisdiction is governed by the "well-

pleaded-complaint rule," which provides that federal jurisdiction exists only when a

federal question is presented on the face of the plaintiff's properly pleaded complaint.'"

*Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904,

912 (8th Cir. 2009) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

"Because this well-pleaded complaint rule 'makes the plaintiff the master of the claim,

-6-

the plaintiff may avoid federal jurisdiction by exclusive reliance on state law.'"   *Id.* (quoting *Caterpillar*, 482 U.S. at 392) (alteration omitted).   Removal cannot be based upon facts not alleged in the complaint.   *Gore*, 210 F.3d at 950 (citing *Caterpillar*, 482 U.S. at 397).   A federal defense, including a preemption defense, ordinarily does not establish federal question jurisdiction.   *Cent. Iowa Power Co-op*, 561 F.3d at 912.   If, however, "a plaintiff has artfully pleaded in a manner that avoids an element of the [cause of action] that rests on federal law, the court 'may uphold removal even though no federal question appears on the face of the plaintiff's complaint.'"   *See Gore*, 210 F.3d at 950 (quoting *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998)).

Removal is also permitted "where federal law completely preempts a plaintiff's state-law claim."   *Rivet*, 522 U.S. at 475.   "The complete preemption doctrine converts an ordinary state-law claim into federal claim."   *Gore*, 210 F.3d at 949.   It applies if the federal statute "provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action[,]" *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003), and the statute's pre-emptive force is "so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."   *Caterpillar*, 482 U.S. at 393 (quotation omitted).   Complete preemption is a question of Congressional intent.   *Gore*, 210 F.3d at 949 (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994)).

### 1.   Facial Preemption and Artful Pleading

No federal question appears on the face of BCBSM's Complaint.  The face of the Complaint alleges solely state-law causes of action for breach of contract and for a declaratory judgment connected with that contract under Minnesota state law.  The Complaint alleges the Plan and BCBSM had a valid contract (the Agreement), BCBSM performed all conditions precedent to its right to demand performance, the Plan breached the contract by refusing to indemnify and defend BCBSM, and BCBSM was damaged by it.  It therefore alleged all elements of a Minnesota contract claim.  *See Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014).  It also alleges there is a justiciable controversy sufficient for a declaratory judgment.  *See Cruz-Guzman v. State*, 916 N.W.2d 1, 13 (Minn. 2018); Minn. Stat. § 555.01.

The Court must, therefore, decide whether BCBSM's Complaint is artfully pleaded to avoid a necessary element resting on federal law and whether BCBSM's claim is completely preempted by federal law such that the Court has original subject matter jurisdiction.  The Plan first argues the Court has original jurisdiction because BCBSM has mischaracterized its claims as simple state-law contractual claims when BCBSM's claims arise out of the Plan's benefit plan documents and are in essence an attempt to assert an ERISA claim for denial of benefits.

Simply because the BCBSM's claims are in some sense connected to a denial of plan benefits does not mean that they are properly understood as artfully pleaded claims

that in fact arise out of a denial of medical plan benefits.  The Complaint alleges the Plan

failed to defend and indemnify BCBS as required by the Agreement.  The Agreement is

not an ERISA plan.  It is a contract between an ERISA plan and its contractor.  While BCBSM

would not have filed its claim absent a denial of benefits, BCBSM's claim is not for those

benefits.  The operative legal issues do not center upon a denial of claims itself.  The

Complaint's discussions of the denial of claims provides context for why a need to defend

and indemnify arose and explains why the case may be ripe for judicial review.[3]  Resolving

whether the Plan must defend and indemnify BCBSM will not resolve whether Fairview is

entitled to ERISA plan benefits, but whether a duty to perform was triggered under

BCBSM and the Plan's separate contract.  The Complaint does not artfully avoid pleading

that BCBSM should receive any ERISA plan benefit, just that it should receive the benefit

of the bargain contained in the Agreement.

The Plan is correct that ERISA preempts claims if the "essence" of the claim is one

for medical benefits that allegedly should have been paid by an ERISA-regulated plan

because such a claim could have been brought under ERISA.  *Ibson v. United Healthcare

Servs., Inc.*, 776 F.3d 941, 945 (8th Cir. 2014); *see also* 29 U.S.C. § 1132(a)(1)(B).  The

essence of BCBSM's claim, however, is not the alleged improper denial of benefits or an

attempt to obtain payment of ERISA-plan benefits.  The essence of BCBSM's claim is a

---

[3] The Court makes no findings here as to whether BCBSM's claims are ripe.

state-law contractual dispute as to whether the Plan is contractually bound to defend and indemnify BCBSM.  The Complaint does not assert that BCBSM is entitled to plan benefits or is even a plan beneficiary.

The Plan cites four cases that it claims illustrate that BCBSM's claims are in essence claims for plan benefits.  All four cases are inapposite as in all four, a **plan beneficiary** sued a plan for improperly **denying or delaying benefits** on state-law theories.  *Ibson*, 776 F.3d at 943–44; *Thompson v. Gencare Health Sys., Inc.*, 202 F.3d 1072, 1073 (8th Cir. 2000); *Hull v. Fallon*, 188 F.3d 939, 941 (8th Cir. 1999); *Olmsted Med. Ctr. v. Carter*, No. 14-2916, 2015 WL 5039216, at *1–2 (D. Minn. Aug. 26, 2015).  BCBSM is neither a plan beneficiary nor does it seek plan benefits.  The Plan argues that *Olmsted* is similar because it did not involve claims directly asserted against an ERISA plan by a beneficiary.  The Plan is correct that the initial complaint in *Olmsted* was not a claim for plan benefits asserted by a plan beneficiary.  *See Olmsted*, 2015 WL 5039216, at *1–2.  But a plan beneficiary then filed a third-party claim against an ERISA plan for plan benefits.  *Id.*  It was this third-party claim that was at issue in the *Olmsted* decision, and the third-party claim was in "essence" an ERISA claim because it was a claim by a plan beneficiary for denied benefits.  *Id.* at *5.  Therefore, *Olmsted* is also inapposite.

Instead, *Olmsted* provides a more apposite hypothetical of what is not an ERISA claim:

> Suppose, for example, that an employer fires an employee, but promises that it will continue to pay premiums so that she

> will continue to be covered under the employer's health-care plan for one year.  Suppose further that, based on that promise, the employee undergoes an elective medical procedure six months later, only to find out that the employer did not fulfill its promise to continue to pay her premiums, and as a result she was terminated from the plan before she had the procedure.  If the employee brings a promissory-estoppel claim against the employer, the claim would not seem to be preempted by ERISA.  In such a case, the employee would concede that she was *not* covered by the plan, and thus that she is *not* seeking benefits under the plan.  Instead, she would argue, she is seeking damages for the harm she suffered because she relied on the employer's promise that it would continue to pay premiums.

*Id.* at *4 (emphasis in original).  BCBSM concedes that it is **not** covered by the plan and is **not** seeking benefits under the plan.  Instead, the essence of BCBSM's claim is for a non-beneficiary to gain the benefit of an independent contract.

Finally, in support of this argument, the Plan argues that BCBSM is "carrying Fairview's water" by bringing a denial of benefits claim on Fairview's behalf.  The facts in the Complaint, however, do not allege or support this and if true would require consideration of facts outside of—and not embraced by—the Complaint, something the Court cannot do at this stage.  Instead, the Complaint alleges that BCBSM is opposed to Fairview and seeks to bring the Plan in against Fairview too.  Even if the arbitration is improper and preempted by ERISA, one method of blocking this arbitration may be

-11-

seeking a declaratory judgment that the arbitration itself is preempted,[4] not refusing to defend and indemnify BCBSM.  Similarly, a method to avoid defending and indemnifying BCBSM may include proving that BCBSM itself breached the Agreement,[5] not seeking to circumvent independent contract remedies via ERISA preemption.  If the Plan is required to defend BCBSM, one method of defending may include seeking a declaratory judgment that the arbitration is preempted.[6]

Because the claims in the Complaint cannot be construed in essence as ERISA claims for denial of plan benefits, the Complaint did not artfully plead to avoid a federal question on its face.

### 2.   *Davila* Complete Preemption

ERISA is a federal statute that is intended to completely preempt many causes of action even if pleaded in terms of state law.  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).  It can therefore overcome the well-pleaded complaint rule because "[t]he purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans . . . [and] ERISA includes expansive preemption provisions, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern."  *Id.*

---

[4] Indeed, this is what the Plan's trustees seek in *Manderson v. Fairview Health Services*, Case No. 21-1797, the companion case.

[5] The Plan's trustees also seek this in the *Manderson* companion case.

[6] The Court makes no findings here on these issues or any of the issues raised by the *Manderson* companion case.  The Court merely observes that Fairview's claim and BCBSM's claims are not identical and thus arguments against the arbitration or against Fairview are not necessarily viable arguments against BCBSM.

at 208–09 (internal citations and quotations omitted); *see also* 29 U.S.C. § 1144(a) ("[ERISA] shall supersede any and all State laws insofar as they . . . relate to any [ERISA plan].").  ERISA preempts "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy." *Davila*, 542 U.S. at 209.

*Davila* established a two-prong test to determine when a state-law claim falls under ERISA § 502(a)(1)(B)[7] as the Plan asserts BCBSM's claims are.  A state-law cause of action is completely preempted (1) "if an individual, at some point in time could have brought [a] claim under ERISA § 502(a)(1)(B)" and (2) "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 211; *accord Am. Fam. Mut. Ins. Co. v. Hollander*, 705 F.3d 339, 362 (8th Cir. 2013) (Beam, J. concurring in part, dissenting in part).  Both prongs must be met for a claim to be preempted. *Dakota, Minnesota & E. R.R. Corp. v. Schieffer*, 857 F. Supp. 2d 886, 892 (D.S.D. 2012), *aff'd*, 711 F.3d 878 (8th Cir. 2013).

An individual can bring a claim under ERISA § 502(a)(1)(B) if the individual is an ERISA plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  The Plan argues that because Fairview could have brought a claim under ERISA § 502(a)(1)(B) at some point in

---

[7] ERISA § 502 is codified at 29 U.S.C. § 1132.

time, the first *Davila* prong is met.  Fairview, however, is not the plaintiff in this case;
BCBSM is.   BCBSM is opposed to Fairview in the noticed arbitration.   Therefore, the
question is whether BCBSM could have brought its claim under § 502.   BCBSM is not and
was never a plan participant or beneficiary, *see* 29 U.S.C. §§ 1002(7)–(8), and it is not
seeking benefits due or to enforce rights under an ERISA plan.   Nor does the Complaint
indicate that BCBSM was assigned any right to recover based on § 502.   Moreover, the
relief sought is defense, indemnification, and costs incurred responding to Fairview.
These are not plan benefits, and Fairview could not have brought a claim for them under
ERISA.   In sum, even if Fairview could have brought a claim under § 502(a)(1)(B) for the
denied benefits,[8] no individual could have brought the claim at issue **in this case** under
ERISA.   Therefore, the first *Davila* prong is not met, and the claim is not preempted.

A claim is also not preempted if there is an independent legal duty separate from
ERISA and the ERISA plan.   The Plan argues there is no independent legal duty here
because the gravamen of BCBSM's claim is the denial of benefits under the Plan's medical
benefit plan.   BCBSM's Complaint, however, asserts its defense and indemnification
demand under the Agreement between BCBSM and the Plan not under an ERISA plan.
Without the Agreement, there would be no duty to defend and indemnify as this duty is
not a benefit provided to plan beneficiaries or participants.   Determining whether this

---

[8] Because it is unnecessary to the resolution of this issue, the Court does not decide here
whether Fairview could have brought an ERISA § 502 claim.

duty is triggered or whether BCBSM breached the Agreement may require some interpretation of the plan documents, but the duty itself is nowhere in the plan documents.[9]  BCBSM's claims arise out of a separate agreement that only references the ERISA plan.   A separate contract's references to ERISA plan documents does not necessarily implicate ERISA preemption.  *Dakota, Minnesota & E. R.R. Corp. v. Schieffer*, 648 F.3d 935, 940 (8th Cir. 2011).  Therefore, there is an independent legal duty, and the claim also fails the second prong of the *Davila* test.

### 3.       Preemption Under ERISA § 502(a)(3)

The Plan also argues that BCBSM's claims fall into ERISA § 502(a)(3) and are therefore preempted.  ERISA § 502(a)(3) allows a plan participant, beneficiary, or fiduciary to enforce the terms of an ERISA plan.  29 U.S.C. § 1132(a)(3).  ERISA preemption extends to claims that are properly understood as ERISA § 502(a)(3) claims.  *Lyons v. Philip Morris*

---

[9] Although resolving BCBSM's claim may require some interpretation of the ERISA plan document, BCBSM's claims are not "inextricably intertwined" to the ERISA plan such that the claims are preempted.  *See Gore*, 210 F.3d 949.  In *Gore*, the state-law causes of action were preempted by a collective bargaining agreement because the agreement was "the defining source of the duties specifically owed by the defendants for each claim asserted" and the case was brought by an employee whose employment terms were subject to that collective bargaining agreement.  *Id.* at 949–50. There was no other source of any duty.  Here, unlike the employee in *Gore*, BCBSM is not a beneficiary of the benefit plan and there is another source of the Plan's legal duty to BCBSM—the Agreement.  In this way this case is more akin to the hypothetical promissory estoppel claim in *Olmsted* than *Gore*.  The hypothetical claim in *Olmsted* would require some interpretation of the plan document because the former employee would have relied on enforcement of the terms of the plan document for the promissory estoppel claim so a hypothetical court would have to interpret the plan document to determine what the employee should have received.  *See Olmsted*, 2015 WL 5039216, at *4.  BCBSM's claim is even less intertwined because, unlike the *Olmsted* hypothetical, there is also a wholly separate agreement.

*Inc.*, 225 F.3d 909, 912 (8th Cir. 2000) (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144–45 (1990)). BCBSM, however, is not seeking to enforce the terms of an ERISA plan. It is seeking to enforce the terms of a separate contract—the Agreement. The duty to defend and indemnify is a term of this Agreement, not a term of an ERISA plan. Therefore, BCBSM could not have brought a claim under § 502(a)(3) seeking defense and indemnification and this section is also not grounds for preemption.

BCBSM's claims arise not out of an ERISA plan or a claim for ERISA plan benefits but rather out of a separate contract. Although ERISA preempts many state-law claims, BCBSM's claims are not preempted by ERISA. Because BCBSM's well-pleaded Complaint pleads only state contract law causes of action that are not completely preempted, the Court lacks subject matter jurisdiction and must remand the matter to state court.

## II.   MOTION FOR ATTORNEY FEES

BCBSM requests attorney fees if the Court remands the case to state court. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The decision to award fees and costs as part of a remand is discretionary. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* When deciding whether to award fees and costs under § 1447(c), courts "should recognize the desire to deter removals

-16-

intended to prolong litigation and impose costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140.

The Plan sought to remove BCBSM's Complaint based upon ERISA preemption. ERISA is a complicated law and ERISA preemption is particularly difficult leading to a great deal of litigation and appeals. ERISA preempts many claims including some that overlap with this case. The fact pattern presented here is uncommon and tests novel ERISA preemption arguments. Thus, the Plan's removal—though erroneous—was not objectively unreasonable and awarding fees here would undermine the Congressional purpose of allowing for removal especially in ERISA cases. The Court will deny the Plan's Motion for Attorney Fees and Costs.

### III.  MOTION TO DISMISS

The Plan filed a Motion to Dismiss BCBSM's case. Because the Court lacks subject matter jurisdiction over the case and will grant the Motion to Remand, it is without jurisdiction to evaluate the Plan's Motion to Dismiss. Therefore, the Court will deny the Plan's Motion to Dismiss as moot.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion to Remand [Docket No. 15] is **GRANTED**;

2.   Plaintiff's Motion for Attorney Fees [Docket No. 15] is **DENIED**; and

3.   Defendant's Motion to Dismiss [Docket No. 7] is **DENIED** as moot.


DATED:  March 23, 2022                          _____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                           Chief Judge
                                                 United States District Court